LARRY HOLMES,

                Petitioner,

- against -

RICHARD BROWN, Superintendent,

                Respondent.

------------------------------------------------------------x

NOT FOR PUBLICATION
MEMORANDUM & ORDER
10-cv-03592 (CBA)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 6 - 2013 ★
BROOKLYN OFFICE

AMON, Chief United States District Judge.

Larry Holmes, proceeding pro se, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He seeks to vacate his 2002 New York State conviction, following a jury trial in the Supreme Court of New York, Kings County, for manslaughter in the first degree. Holmes raises three challenges to his conviction: (1) the trial court erred in its jury charge by failing to instruct the jury that if it found he was not guilty of murder in the second degree by reason of justification, it must also acquit him of manslaughter in the first degree by reason of justification; (2) his trial counsel rendered constitutionally ineffective assistance by failing to object to the trial court's justification charge; and (3) his appellate counsel rendered constitutionally ineffective assistance by failing to argue on direct appeal that his trial counsel was ineffective in failing to preserve his challenge to the jury instructions. For the reasons stated below, Holmes's petition is denied.

## BACKGROUND

### I. Trial, Conviction, and Sentencing

Holmes was indicted and charged with two counts of murder in the second degree (one count based on intent to murder and one based on "depraved indifference" murder), see N.Y.

1

Penal Law § 125.25, and one count of criminal possession of a weapon in the fourth degree, see N.Y. Penal Law § 265.01(2), in connection with the November 8, 2001 death of Allan Grayson.

## A. The Trial

At trial, Ida Singleton, Grayson's stepmother, and her sister Detricia Isaac, both testified that on the evening of November 8, 2001, while sitting outside the home in which they and Grayson lived, they were approached by four people: Holmes, his sister Brandy, his friend Tiffany, and Rahim Boynton. (Trial Transcript ("Tr.") 107-08, 199-202.) Holmes asked Singleton and Isaac where Grayson was, and, after learning that he was inside the house, rang the doorbell. (Tr. 112-13.) Singleton testified that when Grayson came to the door, Holmes "threw the first punch," hitting Grayson (Tr. 116); Isaac likewise testified that Holmes began the hostilities, describing Holmes as having "push[ed]" Grayson (Tr. 204). Neither woman had a clear view of the fight that ensued (Tr. 122, 208-09); however, Singleton testified that after a couple minutes of fighting, Grayson suddenly retreated further into the house, and Holmes walked outside. (Tr. 122-24.) Isaac entered the house and found that Grayson had been stabbed. (Tr. 214-15.) Neither woman clearly saw either man holding a knife. However, Isaac testified that, as Holmes left the house after the fight, she saw him standing in the street with a "long silver object" of approximately seven to ten inches in length. (Tr. 211-12.) Isaac also testified that she saw nothing in either of Grayson's hands as he was walking down the stairs prior to the fight. (Tr. 222.) Several other members of Grayson's family treated him after the incident; they each testified that they did not see any knife on his person. (Tr. 267-68, 287-88.)

The government also elicited testimony from people who were with Holmes or Grayson earlier that evening. Keesha Graham testified that earlier in the evening, outside of Holmes's presence, Grayson had told her and Tiffany that he was going to hurt Holmes because of an

2

earlier incident in which Holmes had choked him. (Tr. 484-85.) Boynton testified that, later in the evening, he drove Tiffany and Brandy to pick up Holmes, and Tiffany related Grayson's comments to Holmes. (Tr. 779-80.) Holmes responded by calling Grayson "a punk" and stating that "he was just going to step to it." (Tr. 780.) Boynton testified that he was instructed to drive back to Graham's house, located on Grayson's block (Tr. 781), where he observed Holmes, Tiffany, and Brandy speak briefly to Graham before walking toward Grayson's house (Tr. 510-11). Boynton did not see what happened when Holmes entered Grayson's house (Tr. 512), but testified that as he drove Holmes away after the incident, he did not see any blood on Holmes or elsewhere in the car. (Tr. 518.)

In defense, Holmes offered testimony from his girlfriend, Renee Land, and his sister, Brandy. Land, who was not present for the incident, testified that she had been present earlier in the evening when Grayson had stated that he was "going to F [Holmes] up." (Tr. 596.) Brandy testified that, during the incident, she saw Grayson holding a knife as he walked downstairs before the fight began. (Tr. 632.) During cross-examination, however, the government questioned Brandy about her grand jury testimony, in which she had testified that she did not clearly see a knife until she saw one on the floor after the fighting had started. (Tr. 685.)

**B. The Jury Charge**

On October 18, 2002, the court held a charge conference on the record. At the conference, the court informed the parties that it would submit three counts to the jury: murder in the second degree based on intentional killing; manslaughter in the first degree; and criminal possession of a weapon in the fourth degree. (Tr. 730-31.) The court also noted its intention to charge the jury on, inter alia, "self-defense," as well as to give an "expanded charge on initial aggressor." (Tr. 731.) Holmes's trial attorney raised three objections to the proposed jury

3

charge: one to the court's instruction that the State had no obligation to prove its case through any particular investigative technique, one regarding the fact that no weapon was found, and one regarding the initial aggressor charge. (Tr. 733-36.) All three objections were rejected by the court.

After informing the jury of the charges it was to consider and explaining to the jury that it should "only consider Manslaughter in the First Degree if you have found the defendant not guilty of the crime of Murder in the Second Degree" (Tr. 954), the court began its explanation of the justification defense:

> Now, let me charge you, relative to those two counts, Murder in the Second Degree and Manslaughter in the First Degree, the defense of justification, or self-defense as it's commonly called, the defense of deadly physical force.
>
> . . . .
>
> Now, if the People have failed to establish all of the essential elements of the crime of Murder in the Second Degree and Manslaughter in the First Degree, as I have just instructed you, you must find the defendant not guilty. If that is your verdict, you need not, of course, consider the defendant's further defense of self-defense.
>
> However, if you have determined that the People have established all of the elements of the crime of Murder in the Second Degree or Manslaughter in the First Degree, you must then turn to consider his defense known in the law as "justification," but which is commonly referred to as "self-defense." Even if a defendant is otherwise guilty, if you should determine that he acted in "self-defense" meaning with "justification" then you must, nevertheless, find him not guilty.

(Tr. 956-57.)

After instructing the jury on the meanings of "deadly physical force" and "serious physical injury," the court told the jury that "[i]n his defense to the charges of both murder and manslaughter the defendant raises the defense that he was legally justified in using deadly physical force against the victim in his own self-defense" (Tr. 958), and proceeded to instruct the

4

jury on the elements of a justification defense. The court also informed the jury that the government must disprove the defense beyond a reasonable doubt, and concluded its justification charge by stating:

> To sum up: The People are[] required to prove beyond a reasonable doubt, in addition to all of the elements of murder or manslaughter, as to which you have been instructed, that the defendant was not acting in self-defense. Unless the People prove to your satisfaction beyond a reasonable doubt that the defendant was not acting in self-defense, in accordance with my instructions on the law of self-defense, you must find the defendant not guilty of the crime of murder or manslaughter.
>
> On the other hand, if the People do convince you beyond a reasonable doubt that the defendant was not acting in self-defense, you may then find the defendant guilty of the crime of murder or manslaughter.

(Tr. 965.)

The court finished charging the jury and, at a sidebar, asked the attorneys whether they had any objections. Holmes's counsel reiterated his objection to the initial aggressor instruction. (Tr. 973.) No other objections were raised by either party.

### C. Conviction and Sentencing

The jury returned a verdict convicting Holmes of manslaughter in the first degree, but acquitting him of murder in the second degree and criminal possession of a weapon in the fourth degree. (Tr. 998-99.) The court sentenced Holmes principally to a determinate prison term of twenty-five years. (Sentencing Transcript at 12-13.)

## II. Post-Conviction State Court Proceedings

In addition to directly appealing his conviction to the New York Appellate Division, Second Department, Holmes brought a motion pursuant to N.Y. Crim. Proc. Law § 440.10, and filed two motions for writs of error coram nobis.[1]

---

[1] Holmes's first coram nobis petition, brought in October 2005 in the Appellate Division, Second Department, advanced only one argument: that his appellate counsel was ineffective for failing to argue on direct appeal that the

5

## A. Direct Appeal

Represented by new counsel, Holmes timely appealed his conviction to the Appellate Division, Second Department. Holmes raised two arguments on appeal: (1) that he was denied due process and a fair trial by the trial court's failure to instruct the jury that, should it find Holmes not guilty by reason of justification on the murder count, it should not consider the manslaughter count at all (a so-called "stop consideration" instruction); and (2) that his sentence was excessive in light of his lack of prior convictions and his work history. (Holmes Brief on Direct Appeal (Docket Entry ("DE") 2 at 8-25), at 3.)

On October 25, 2004, the Second Department affirmed Holmes's conviction and sentence. See People v. Holmes, 12 A.D.3d 532 (N.Y. 2d Dep't 2004). In a brief ruling, the court determined that Holmes's challenge to the jury charge was "unpreserved for appellate review and . . . decline[d] to review th[at] issue in the exercise of [its] interest of justice jurisdiction," and ruled that "[t]he sentence imposed was not excessive." Id. at 532. Holmes sought leave to appeal to the New York Court of Appeals, and, on January 24, 2005, such leave was denied. People v. Holmes, 4 N.Y.3d 764 (2005).

## B. 440.10 Motion

Pursuant to N.Y. Crim. Proc. Law § 440.10, Holmes, proceeding pro se, filed a petition to vacate his conviction on July 6, 2005, in Kings County Supreme Court. Holmes argued in the petition that he had been denied effective assistance of counsel at trial because of his counsel's failure to object to the jury charge and request a "stop consideration" instruction. (Holmes § 440.10 Motion (DE 2 at 104-25), at 11.) The motion was denied on February 7, 2007. See People v. Holmes, No. 8794/01, Decision & Order (N.Y. Sup. Ct. Feb. 7, 2007) (DE 2 at 129-30)

---

introduction of his grand jury testimony at trial violated the Fifth Amendment. (See Holmes Memorandum of Law in Support of Application for Writ of Error Coram Nobis (Docket Entry 2 at 77-86), at 1.) Because Holmes does not raise this argument in this habeas petition, his first coram nobis petition is not relevant to the resolution of this case.

6

("440.10 Decision"). The court found that "collateral review [wa]s not warranted" because Holmes "did not raise the claim on which he bases this motion on direct appeal." Id. at 1. The court nonetheless briefly addressed the merits of Holmes's argument that the jury charge was improper, noting that the facts of Holmes's case "stand in sharp contrast" to the facts in the cases cited by Holmes in which a "stop consideration" charge was required. Id. The court therefore concluded that the motion was both "without merit and procedurally barred." Id.

On July 20, 2009, Holmes moved for leave to appeal to the Second Department the denial of his § 440.10 motion. (Holmes Motion for Leave to Appeal § 440.10 Denial (DE 2 at 131-43).) On March 18, 2010, his application was denied. See People v. Holmes, No. 8794/01, Decision & Order On Application (N.Y. 2d Dep't Mar. 18, 2010) (DE 2 at 144).

### C. 2010 Coram Nobis Petition

On October 14, 2010, after Holmes had filed the instant federal habeas petition, Holmes, pro se, applied for a writ of error coram nobis in the Second Department. Holmes argued that his appellate counsel was ineffective, principally for failing to argue that trial counsel was ineffective in not objecting to the jury charge. (See Holmes Second Application for Writ of Error Coram Nobis (DE 11-2 at 29-80) ("Second Coram Nobis Application"), at 31.) On March 22, 2011, the Second Department denied the application, finding that Holmes "failed to establish that he was denied the effective assistance of appellate counsel." People v. Holmes, 82 A.D.3d 1122, 1122 (N.Y. 2d Dep't 2011). Holmes's subsequent motion for leave to appeal to the Court of Appeals was denied on July 7, 2011. See People v. Holmes, 17 N.Y.3d 806 (2011).

## DISCUSSION

Holmes raises three arguments in this federal habeas corpus petition: (1) the trial court erred in failing to give a "stop consideration" instruction in its jury charge; (2) his trial counsel was ineffective for failing to object to the trial court's flawed jury charge; and (3) his appellate counsel was ineffective for failing, on direct review, to raise the issue of his trial counsel's ineffectiveness in not objecting to the jury charge. Holmes's first two claims are procedurally barred; his third fails under the deferential standard of review required by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

### I. Challenge to the Court's Justification Charge

Holmes claims that the trial court erred in failing to instruct the jury that an acquittal by reason of justification on the murder count required an acquittal on the manslaughter count. He argues that the failure to so instruct the jury violated his rights to due process and a fair trial.

#### A. Procedural Bar

Ordinarily, a federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). A state law ground is "adequate to support the judgment and foreclose review of a federal claim if it is 'firmly established and regularly followed' in the state." Garvey v. Duncan, 485 F.3d 709, 713 (2d Cir. 2007) (quoting Lee v. Kemna, 534 U.S. 362, 376 (2002)). Generally, the procedural bar may only be overcome if "'the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" Green, 414 F.3d at 294 (quoting Coleman, 501 U.S. at 750).

1. *New York's Contemporaneous Objection Rule*

The Second Department rejected Holmes's challenge to the justification charge on the ground that it was "unpreserved for appellate review," and it declined to otherwise "review th[at] issue in the exercise of [its] interest of justice jurisdiction." People v. Holmes, 12 A.D.3d at 532. New York's contemporaneous objection rule bars appellate review of trial court rulings unless an objection was made to the ruling "by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law § 470.05(2). The Second Circuit "has long made clear that New York's contemporaneous objection rule is . . . a firmly established and regularly followed rule" that qualifies as an adequate and independent state ground. Whitley v. Ercole, 642 F.3d 278, 286 (2d Cir. 2011) (internal quotation marks omitted); see also Downs v. Lape, 657 F.3d 97, 102-04 (2d Cir. 2011); Yara v. Ercole, 558 F. Supp. 2d 329, 336 (E.D.N.Y. 2008).

Holmes argues that, nonetheless, the contemporaneous objection rule is not an adequate state ground because, when addressing trial courts' failures to issue a "stop consideration" charge, the Second Department "has consistently, over the years, gone on to rule on the merits of the argument," even when that challenge was unpreserved. (Holmes Reply Memorandum of Law in Support of Petition for Habeas Corpus (DE 18), at 5 (emphasis in original).) Holmes primarily relies on People v. Feuer, 11 A.D.3d 633 (N.Y. 2d Dep't 2004), in which the Second Department, after noting that a similar challenge to a justification charge was unpreserved, chose to "exercise its discretionary power to disregard the absence of objection" based on the conclusion that, considering the substantial evidence at trial that supported the defendant's claim of self-defense, "justice requires a new trial," id. at 634 (internal quotation marks omitted).

The decision in Feuer does not render the contemporaneous objection rule an inadequate state law ground. First, Feuer is the only case cited by Holmes in which a claim that a "stop consideration" charge should have been given was sustained in the interests of justice by a New York court despite being unpreserved. By contrast, courts have regularly refused to review challenges nearly identical to Holmes's for failure to object below. See, e.g., People v. Palmer, 34 A.D.3d 701, 703-04 (N.Y. 2d Dep't 2006) (refusing to reach challenge to justification charge under "interest of justice jurisdiction" because "of the overwhelming evidence disproving justification"); see also People v. Gueye, 81 A.D.3d 974, 974 (N.Y. 2d Dep't 2011); People v. Brooks, 71 A.D.3d 1043, 1043 (N.Y. 2d Dep't 2010); People v. Ware, 36 A.D.3d 838, 839 (N.Y. 2d Dep't 2007); People v. Peterkin, 23 A.D.3d 678, 679 (N.Y. 2d Dep't 2005); People v. Jung, 22 A.D.3d 506, 506 (N.Y. 2d Dep't 2005).

Second, even if the practice of allowing appellants to overcome the contemporaneous objection rule in similar circumstances was more common, a procedural rule that affords discretion to a reviewing court can nonetheless serve as an adequate ground that bars federal habeas review, unless that "discretion has been exercised to impose novel and unforeseeable requirements without fair or substantial support in prior state law." Walker v. Martin, 131 S. Ct. 1120, 1130 (2011) (internal quotation marks omitted); see also id. at 1127-28 ("A rule can be firmly established and regularly followed . . . even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." (internal quotation marks omitted)). The Second Circuit has acknowledged that New York's contemporaneous objection rule allows for some "exercise of discretion" on the part of appellate courts, and has ruled that such discretion does not make the rule inadequate as a procedural bar. Downs, 657 F.3d at 103.

10

Holmes's claim regarding the justification charge was therefore decided on an independent and adequate state law ground.[2]

2. *Cause & Prejudice/Fundamental Miscarriage of Justice*

Holmes argues that, even if his claim was decided on an independent and adequate state ground, his default should be excused because he can demonstrate cause for default and actual prejudice, see Coleman, 501 U.S. at 750. Holmes contends that the cause for his default was his trial counsel's failure to object to the jury charge. However, "[a]ttorney error short of ineffective assistance of counsel does not constitute cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 492 (1986). Because, as discussed infra Part II.B.2, Holmes's contention that his trial counsel was ineffective is meritless, he has failed to demonstrate cause for his failure to object to the jury charge.[3]

Holmes also claims that it would be a fundamental miscarriage of justice for this Court not to reach the merits of his challenge to the jury charge. "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency," Bousley v. United States, 523 U.S. 614, 623 (1998); to meet that standard, "the petitioner must demonstrate that more likely

---

[2] Holmes makes no argument that the application of the contemporaneous objection rule in his case was "exorbitant," see Garvey, 485 F.3d at 713-14 ("[I]n certain limited circumstances, even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is exorbitant." (internal quotation marks omitted)). Even if he did, nothing indicates that the application of the rule in this case was anything but routine. Holmes's trial counsel at no point objected to the jury charge on the ground that a "stop consideration" instruction should have been provided; as such, that claim was clearly not preserved for appellate review.
[3] Holmes's argument would also fail because his ineffective assistance of trial counsel claim is procedurally barred. See infra Part II.B.1; see also Reyes v. Keane, 118 F.3d 136, 140 (2d Cir. 1997) ("[A] petitioner may not bring an ineffective assistance claim as cause for a default when that ineffective assistance claim itself is procedurally barred.").

than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt," Rivas v. Fischer, 687 F.3d 514, 541 (2d Cir. 2012) (internal quotation marks omitted). Holmes cannot establish actual innocence. The evidence adduced at trial strongly supported a finding by the jury that Holmes was not justified in his use of deadly force.

**B. The Merits**

Even were this Court to reach the merits of Holmes's challenge to the justification charge, he would not be entitled to federal habeas relief. "[F]ederal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990). "In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." Casillas v. Scully, 769 F.2d 60, 63 (2d Cir. 1985); see also Cupp v. Naughten, 414 U.S. 141, 146 (1973) (federal court may only grant habeas relief based on erroneous jury instruction if it is "established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment"). "The question is not whether the trial court gave a faulty instruction, but rather 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001) (quoting Cupp, 414 U.S. at 147).

1. *Violation of New York State Law*

As an initial matter, it is unclear that the trial court's justification charge was erroneous under New York state law. It is true that a series of cases from the New York Appellate Division's Second Department has held as reversible error the failure of a trial court "to instruct the jurors that if they found the defendant not guilty of a greater charge on the basis of

justification, they were not to consider any lesser counts." Feuer, 11 A.D.3d at 634; see People v. Ross, 2 A.D.3d 465, 466 (N.Y. 2d Dep't 2003); People v. Bracetty, 216 A.D.2d 479, 480 (N.Y. 2d Dep't 1995); People v. Albergo, 181 A.D.2d 683, 684 (N.Y. 2d Dep't 1992); People v. Castro, 131 A.D.2d 771, 773-74 (N.Y. 2d Dep't 1987). The New York Court of Appeals, however, has not yet ruled on whether such an instruction is required, and at least one of New York's other appellate divisions has explicitly departed from that line of Second Department cases, see People v. Bolling, 24 A.D.3d 1195, 1196-97 (N.Y. 4th Dep't 2005). "Therefore, the issue of whether the language is necessary in a justification defense charge remains unsettled." Love v. Smith, No. CV-08-3746, 2009 WL 2422384, at *7 (E.D.N.Y. Aug. 6, 2009).

In the absence of a clear rule requiring a "stop consideration" instruction, the trial court's justification charge appears entirely proper: As required by New York's revised pattern jury instructions, the court clearly instructed that the absence of justification was "'a specific element of each of the submitted charges,'" id. at *8 (quoting Palmer, 34 A.D.3d at 703-04), and "expressly ordered the jury to acquit upon finding that the prosecution failed to disprove the justification defense beyond a reasonable doubt," id. at *9. As the New York Court of Appeals has yet to indicate that anything more is required, it is doubtful that the charge violated New York state law.

2. *Violation of Due Process*

Even if the jury charge was erroneous under New York law, it is well settled that "[a] mere error of state law does not deny a defendant his right to due process" unless it "'so infected the entire trial that the resulting conviction violates due process.'" Blazic v. Henderson, 900 F.2d 534, 541 (2d Cir. 1990) (quoting Cupp, 414 U.S. at 147). Such a result only occurs when the error was "sufficiently harmful to make the conviction unfair." Jackson v. Edwards, 404

F.3d 612, 624 (2d Cir. 2005) (internal quotation marks omitted); see also Davis, 270 F.3d at 132 (finding due process violation in part because error was not "a minor error of state law in explaining the legal standards to the jury").

Assuming a "stop consideration" instruction should have been given under state law, the failure to give such an instruction was nothing more than a minor error of state law that could not have plausibly rendered Holmes's conviction unfair. When instructions have been held to violate due process, the flaws typically are substantial, such as the trial court's complete failure to instruct the jury on a relevant defense. See, e.g., Jackson, 404 F.3d at 624-27 (failure to charge jury on justification when charge was warranted resulted in due process violation); Davis, 270 F.3d at 131-32 (same). Here, by contrast, the court's charge was undoubtedly sufficient to allow the jury to properly consider the justification defense. The jury was instructed on the elements of the defense and was explicitly told that if it concluded Holmes was justified, it was required to acquit him of both murder and manslaughter. (See Tr. 965.) Holmes's proposed instruction adds nothing to that charge; both instructions unambiguously require an acquittal on both counts upon a finding of justification. Thus, even if the omission of a "stop consideration" charge was error under state law, it did not violate Holmes's due process rights, see Duncan v. Fischer, 410 F. Supp. 2d 101, 114 (E.D.N.Y. 2006) ("Because the trial court instructed the jury that a failure to prove that [petitioner] was not acting in self-defense mandated a verdict of not guilty on all charges, any error in the particular language of the charge under New York law did not by itself so infect[] the entire trial that the resulting conviction violates due process." (internal quotation marks omitted)).

## II. Ineffective Assistance of Counsel

Holmes also argues that his conviction should be vacated because he was denied effective assistance of counsel at both the trial and appellate level. He claims his trial counsel was ineffective for failing to object to the trial court's justification charge and that his appellate counsel was ineffective for failing to raise his trial counsel's ineffectiveness.

### A. AEDPA Standards of Review

When, pursuant to § 2254, a petitioner seeks review of a claim "'adjudicated on the merits in State court proceedings'" AEDPA "imposes a highly deferential" standard of review. Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)) (other internal quotation marks omitted). In such circumstances, a district court may grant an application for a writ of habeas corpus only where the state proceedings resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court decision is 'contrary to' clearly established federal law as determined by the Supreme Court 'if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" Overton v. Newton, 295 F.3d 270, 275 (2d Cir. 2002) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). "A state court decision involves an 'unreasonable application' of Supreme Court precedent if it 'identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413). Whether a state court's determination was unreasonable

is "a substantially higher threshold" than whether that determination was incorrect. Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

**B. Ineffectiveness of Trial Counsel**

1. *Procedural Bar*

Holmes first raised his ineffective assistance of trial counsel claim in his § 440.10 motion. In denying his petition, the court stated that Holmes "did not raise the claim on which he bases this motion on direct appeal. Therefore, collateral review is not warranted." 440.10 Decision at 1 (citing N.Y. Crim. Proc. Law § 440.10(2)(c)). The court, however, went on to observe that the facts of Holmes's case "stand in sharp contrast" to the facts in other cases in which a challenge to the justification charge was raised, and concluded that the § 440.10 motion was "without merit and procedurally barred as well." Id. (internal quotation marks omitted).

N.Y. Crim. Proc. Law § 440.10(2)(c) requires a court to deny a § 440.10 motion when,

> [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

N.Y. Crim. Proc. Law § 440.10(2)(c). The Second Circuit has regularly held that a court's denial of a § 440.10 motion on the basis of the movant's failure to raise an issue on direct appeal is an independent and adequate state ground barring federal habeas review. See, e.g., Sweet v. Bennett, 353 F.3d 135, 139-40 (2d Cir. 2003); Reyes, 118 F.3d at 139-40; see also Ryan v. Mann, 73 F. Supp. 2d 241, 248 n.7 (E.D.N.Y. 1998) ("[F]ederal courts have repeatedly denied habeas relief on the basis of similar state court rulings that ineffective assistance claims were procedurally barred by § 440.10(2)(c).").

Holmes's claim that his trial counsel was ineffective is procedurally barred because of his failure to raise that claim on his direct appeal to the Second Department, as was required by § 440.10(2)(c). Holmes cannot establish cause for his failure to raise the issue, as he cannot demonstrate that his appellate counsel was ineffective for failing to raise the issue of trial counsel's performance, see infra Part II.C; see also Murray, 477 U.S. at 492 ("[a]ttorney error short of ineffective assistance of counsel does not constitute cause for a procedural default"), nor has he argued that failing to review the merits of his claim would lead to a fundamental miscarriage of justice. Although the state court, in denying his § 440.10 motion, addressed the merits of his ineffective assistance of counsel claim, it did so only after and in addition to concluding that the motion was procedurally barred. Because a federal court must "honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law," Harris v. Reed, 489 U.S. 255, 264 n.10 (1989), Holmes's claim is procedurally barred.

2. *Merits*

Even if Holmes's claim based on trial counsel's performance was not procedurally barred, he fails to show that the state court's denial of his § 440.10 motion on the merits was an unreasonable application of federal law governing ineffective assistance of counsel claims.[4] Under federal law, in order to establish ineffective assistance of counsel, a petitioner

> (1) "must show that counsel's performance was deficient," . . . so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," . . . and (2) must show "that the deficient performance prejudiced the defense," . . . in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

---

[4] AEDPA deference applies where, as here, a state court found a claim to be procedurally barred but nonetheless evaluated it on the merits. See Zarvela v. Artuz, 364 F.3d 415, 417 (2d Cir. 2004) (applying AEDPA deference where the state court "found petitioner's claim to be unpreserved, and, in any event, without merit").

17

United States v. Gomez, 705 F.3d 68, 79 (2d Cir. 2013) (quoting Strickland v. Washington, 466 U.S. 668, 687, 690 (1984)). The first prong requires courts to be "highly deferential" to counsel's performance, and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Representation is constitutionally deficient only if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

Holmes's argument that his trial counsel was ineffective is based entirely on counsel's failure to object to the court's justification charge. However, as discussed supra Part I.B.1, it is not clear that New York law requires the "stop consideration" charge that Holmes alleges the trial court erroneously omitted. As the failure to object to a jury instruction "constitutes unreasonably deficient performance only when the trial court's instruction contained clear and previously identified errors," Aparicio, 269 F.3d at 99 (internal quotation marks omitted), the failure to object to the not-clearly-erroneous justification charge cannot plausibly render trial counsel's performance deficient, see also Love, 2009 WL 2422384, at *7 (rejecting ineffective assistance of counsel claim based on the failure to object to a similar jury instruction in light of the lack of a "clear state rule on whether the stop-consideration language must be included"). Furthermore, because the trial court's justification charge was practically indistinguishable from the charge Holmes desires, see supra Part I.B.2, there is no basis for concluding that the failure to object to the charge fell outside the wide range of reasonable legal assistance.

Holmes also cannot show any prejudice from counsel's alleged deficiency. Like Holmes's proposed charge, the trial court's jury charge explicitly instructed the jury that a finding of justification required it to acquit on both charges. Since this Court must presume that the jury followed the instructions it was given, Richardson v. Marsh, 481 U.S. 200, 206 (1987),

there is no possibility that an explicit "stop consideration" charge would have changed the jury's verdict. Furthermore, it is apparent that the jury rejected Holmes's justification defense in any event, as the evidence suggesting that he initially attacked Grayson – including testimony indicating that he intentionally sought out Grayson, that he initiated the fighting, and that he was seen holding an object that looked like a knife – was compelling.

In short, Holmes cannot demonstrate that the state court unreasonably applied clearly established federal law, as he presented no evidence suggesting that his trial counsel's performance was deficient under the Strickland standard. His habeas petition based on his trial counsel's performance is therefore denied.

### C. Ineffectiveness of Appellate Counsel

Holmes's ineffective assistance of appellate counsel claim, although not procedurally barred, also fails under AEDPA's deferential standard of review. Holmes argues that his appellate counsel was ineffective for failing to raise on appeal the issue of his trial counsel's ineffectiveness with regard to the justification charge. In order to show that appellate counsel was ineffective in failing to raise a certain argument on appeal, a petitioner must show that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). Holmes cannot meet this burden: To establish the ineffectiveness of Holmes's trial counsel, Holmes's appellate counsel would have had to demonstrate that trial counsel acted deficiently in failing to object to the justification charge, and that the failure caused Holmes to not receive a fair trial, see Rosario v. Ercole, 601 F.3d 118, 123-24 (2d Cir. 2010) (test for ineffective assistance of counsel under New York law is the same as the Strickland test, except the second prong asks "whether the attorney's conduct constituted egregious and prejudicial error such that defendant did not receive

19

a fair trial"). Because, as discussed above, Holmes would not have been able to establish trial counsel's ineffectiveness, it was not unreasonable for appellate counsel to forego raising that issue on direct appeal. Likewise, because that argument would not have been successful, Holmes also cannot demonstrate prejudice from his appellate counsel's decision not to raise it. The Second Department's decision in denying Holmes's coram nobis petition was, therefore, not an unreasonable application of the Strickland test.[5]

## CONCLUSION

For the reasons above, Holmes's habeas petition is denied in its entirety. Since Holmes has failed to make a "substantial showing of the denial of a constitutional right," a Certificate of Appealability shall not issue. 28 U.S.C. § 2253(c). The Clerk of the Court is directed to enter judgment and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
December 5 , 2013

s/Carol Bagley Amon

Carol Bagley Amon
Chief United States District Judge

---

[5] In its memorandum of law in opposition to Holmes's ineffective assistance of appellate counsel claim, the State argues extensively that Holmes's appellate counsel was not ineffective in failing to raise the argument that the State, at trial, had not disproved Holmes's justification defense. Holmes, however, does not raise this claim in his amended habeas petition. As such, the Court does not consider this issue.

20